**John MIXON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–709.**

Court of Criminal Appeals of Oklahoma.

April 19, 1976.

Joe K. Page, Poteau, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Mary Ann Karns, Legal Intern, for appellee.

## MEMORANDUM OPINION

BUSSEY, Judge:

Appellant, John Mixon, hereinafter referred to as defendant, was charged and tried in the District Court, Haskell County, Case No. CRF–73–24, for the offense of Shooting with Intent to Kill. The jury found him guilty of the lesser included offense of Assault with a Dangerous Weapon, in violation of 21 O.S.1971, § 645, and fixed his punishment at five (5) years' imprisonment. From said judgment and sentence an appeal has been perfected to this Court.

Briefly stated, at trial the State's evidence in chief established that defendant shot Donald L. Mabry on the night of May 20, 1973, outside the Twilight Club located about four miles west of Stigler in Haskell County. The victim was working part-time at the night club and permitted defendant to enter without paying an admission fee when defendant stated that he was a District Judge and had some papers to serve. However, the victim was subsequently told that defendant had falsely represented himself and required defendant to pay the admission fee. After an apparent argument with a woman, defendant subsequently walked from the club stated, "he was going to get his gun and shoot someone." [Tr. 16] The unarmed victim followed defendant from the club attempting to persuade him not to bring a gun inside, but defendant proceeded to his car and unlocked the passenger door. When the victim told the defendant that he might kill someone if a gun were discharged inside the building, defendant replied, "well I think I'll just kill you." [Tr. 16] Defendant then reached around the car door and shot the victim without provocation, and during an ensuing struggle over the gun shot the victim again. Defendant then tried to shoot the victim a third time, but the hammer of the .38 caliber revolver fell against the victim's hand with which he also secured the movement of the cylinder to the pistol. The victim was then able to subdue defendant until others assisted in taking the pistol from him. Defendant was arrested by officers arriving at the scene, and the victim was removed to a hospital by ambulance. The victim was hospitalized for fourteen days as a result of the two gunshot wounds but continued to suffer recurring pain with one of the injuries.

Defendant testified that he had been involved in law enforcement for a number of years, and established that in 1971 he was appointed investigator for District Attorney District Sixteen in LeFlore and La-

timore Counties by District Attorney, D. G. Hart, also known as Judge Hart. Prior to the alleged offense he resigned that position due to ill health, but at the request of the District Attorney agreed to finish his investigation of a burglary which had occurred in LeFlore County. During this period he retained a commission as Deputy Sheriff for LeFlore County although he was neither salaried nor bonded to perform such duties. At about 9:30 on the night of the alleged offense, defendant went to the Twilight Club in Haskell County to contact a friend with regard to the pending burglary investigation. Defendant testified that he left his gun in the car and paid the admission fee upon entering the club. Defendant denied representing himself as a District Judge with some papers to serve, but told the victim he had worked for Judge Hart and was looking for someone. when the victim asked if they were acquainted. Shortly thereafter, defendant left the club momentarily to remove his hearing aid due to the noise inside. Upon again entered the club the victim demanded payment of the admission fee, and when defendant informed him that he had already paid, the victim stated, "Why you son-of-a-bitch, are you trying to make me out a liar?" [Tr. 75] Defendant explained that his chest was taped as result of having two broken ribs, and to avoid any difficulty he again paid the admission fee. Unable to locate the man whom he had sought to contact with reference to the burglary investigation, defendant left the club within a few minutes and while proceeding to his car heard the victim state, "you son-of-a-bitch, they tell me you carry a knife and I'm going to make you eat it." [Tr. 77] Defendant immediately opened the passenger door to his car and entered the vehicle, but before the door could be closed the victim also entered the car with some type of instrument and began striking at defendant. In the ensuing struggle, defendant was able to secure his pistol and in self defense shot at the victim's leg so as to not seriously injure him. The gun again

discharged accidently as the victim and defendant were grappling for control of the pistol. Others then arrived and obtained possession of the pistol from both the victim and defendant. Defendant subsequently discovered that the instrument he had previously seen the victim with was a pop bottle, and blood was discovered inside the car indicating that the victim had actually entered the vehicle.

Rebuttal testimony presented by the State tended to establish that the defendant served as an investigator for the District Attorney in District Sixteen for only ten months, and resigned following an incident at a tavern in LeFlore County where he was arrested for public intoxication in October, 1971.

The State then rested and defendant presented no evidence in surrebuttal.

■ Upon appeal defendant assigns as error the refusal of the trial court to grant his motion for a suspended sentence, and expressly abandons all other allegations of error. The trial court was presented with a presentence investigation report and defendant's application for suspended sentence was duly heard on May 30, 1975. Defendant recognizes that this Court has consistently held that we will not interfere with the discretion of the trial court in granting or refusing an application for suspended sentence in the absence of an abuse of discretion. See, *Allen v. State*, Okl.Cr., 527 P.2d 204 (1974), *Hamilton v. State*, Okl.Cr., 481 P.2d 471 (1971), and *Ramsey v. State*, Okl.Cr., 473 P.2d 305 (1970). However, defendant contends that the trial court adopted argument of the prosecutor that the application should be denied solely because defendant demanded and received a jury trial, and cites *Gillespie v. State*, Okl.Cr., 355 P.2d 451 (1960), in support of the proposition that this constitutes an arbitrary denial of such an application. Although the prosecutor did present argument seemingly based upon such a premise, we need only observe that the record does not support the conclusion

that the trial court adopted such argument or predicated its decision upon such a contention. The authority cited by defendant is upon this basis readily distinguishable, and this proposition is without merit.

■ Defendant further contends that the trial court failed to exercise sound legal discretion in passing upon the application for suspension of his sentence. Factors favorable to a suspended sentence are outlined in defendant's brief as follows:

"1. That the defendant was an honorably discharged veteran;

2. That he had a prior good reputation;

3. That this was his first offense;

4. That he received a favorable pre-sentence investigation and report;

5. That he had never been on probation before;

6. That he has a history of being a law enforcement officer;

7. That his crime is a type not likely to be repeated;

8. That he received the maximum sentence for this crime;

9. That he is 56 years of age;

10. That he is in poor physical health, afflicted with numerous ailments and scheduled for additional surgery;

11. That he is self-supporting and not drawing public assistance;

12. That he is caring for his aged mother."

The brief filed in behalf of the State lists factors militating against a suspended sentence as follows:

"1. While this was defendant's first conviction, there had been other recent incidents involving intoxication, belligerence and violence on his part;

2. He was not the sole support of his mother, and in fact, his brother was available to help with her care;

3. Defendant's prior law enforcement responsibilities consisted primarily of holding courtesy deputy cards and doing some incidental investigation work for the District Attorney;

4. The witnesses who testified regarding defendant's reputation had been out of touch with him in recent years;

5. There was no present medical testimony to show any especially injurous effect that confinement in a penitentiary might have on his health;

6. The question of self-defense was resolved against defendant at trial, and under the State's version of the case only the resistance of the victim had prevented a more serious injury."

We need only observe that although evidence before the trial court may tend to support an application for suspension of sentence, this Court will not interfere with the decision of the trial court in the absence of an abuse of discretionary authority. See, *Hamilton v. State*, Okl.Cr., 481 P.2d 471 (1971). In the instant case, the record does not indicate that the trial court acted arbitrarily or based its decision upon mere whim or caprice and failed to exercise sound legal discretion. Accordingly, we find this proposition to likewise be without merit, and will not interfere with the decision of the trial court denying defendant's application for suspended sentence. However, this does not preclude defendant from again submitting his application to the trial court under the provisions of 22 O.S. 1971, § 994.

For the above and foregoing reasons, the judgment and sentence appealed from is accordingly, *AFFIRMED*.

BLISS, J., concurs.

BRETT, P. J., specially concurs.

BRETT, Presiding Judge (concurring).
While I concur there was sufficient evidence for the jury to reach a decision in this case, I believe defense counsel's con-

tentions concerning a suspended sentence contain merit. Therefore, I would urge defense counsel to act under the provisions of 22 O.S.1971, § 994, and seek again a suspended sentence.

In my opinion this is another case wherein the Department of Corrections will be overburdened by incarceration of this defendant. There was sufficient information provided the court to show that this defendant is required to take specific medication and that he is not in the best condition of health. At the same time, under supervision of a suspended sentence this defendant can be placed under sufficient restriction to control his actions. Consequently, after reading this record I would recommend to the trial judge that this defendant be considered seriously for a suspended sentence in the event defense counsel acts under the provisions of § 994.